13:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NETWORK-1 TECHNOLOGIES, INC., )
a Delaware Corporation,        )
                               )
            Plaintiff,         )
                               ) C.A. No. 22-1319(MN)
v.                             ) C.A. No. 22-1321(MN)
                               )
FORTINET, INC., and            )
UBIQUITI, INC.,                )
                               )
            Defendants.        )

                      Friday, June 23, 2023
                      10:00 a.m.
                      Oral Argument


                      844 King Street
                      Wilmington, Delaware


BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge




APPEARANCES:


            FARNAN LLP
            BY:  MICHAEL J. FARNAN, ESQ.

                    Counsel for the Plaintiff



            DUANE MORRIS LLP
            BY:  MONTE TERRELL SQUIRE, ESQ.
            BY:  DAVID DOTSON, ESQ.
            BY:  BRIANNA VINCI, ESQ.

                    Counsel for the Defendant
                     Fortinet, Inc.

1

APPEARANCES (Cont'd):

2

3                  FISH & RICHARDSON, P.C.
                   BY:  JEREMY ANDERSON, ESQ.
4                  BY:  DAVID CONRAD, ESQ.
                   BY:  RILEY GREEN, ESQ.
5
                         Counsel for the Defendant
6                        Ubiquiti, Inc.

7

8              _ _ _ _ _ _ _ _ _ _ _ _ _ _

9

09:46:12 10

09:46:12 11          THE COURT:  All right.  Good morning, everyone.

10:04:24 12   Please be seated.

10:04:26 13          Mr. Farnan, I don't think we need an

10:04:27 14   introduction from you.  You seem alone.

10:04:31 15          Who is on the other side.

10:04:33 16          Hi, Mr. Squire.

10:04:35 17          MR. SQUIRE:  Good morning, Your Honor.  Monte

10:04:38 18   Squire on behalf of defendant, Fortinet.  And I'm joined at

10:04:42 19   the counsel table with my colleague, David Dotson from our

10:04:47 20   Duane Morris Atlanta office, and my other colleague, Brianna

10:04:51 21   Vinci from our Philadelphia office.  And David Dotson will

10:04:54 22   be leading the argument.

10:04:55 23          THE COURT:  Who is everyone else here?  Oh, I

10:05:00 24   forgot, we have Ubiquiti.

10:05:05 25          MR. ANDERSON:  We have a second defendant, Your

10:05:06 1    Honor.

10:05:06 2                THE COURT:  I didn't mean to pin that all on

10:05:08 3    you, Mr. Squire.

10:05:09 4                MR. SQUIRE:  I understand, Your Honor.

10:05:09 5                MR. ANDERSON:  Jeremy Anderson on behalf of the

10:05:12 6    defendant, Ubiquiti.  With me is my colleague, David Conrad

10:05:17 7    from our Dallas office and as well as Riley Green from our

10:05:21 8    Dallas office.  And Mr. Conrad will be addressing the Court

10:05:23 9    today.

10:05:23 10               THE COURT:  So I have reviewed the papers and I

10:05:26 11   have carefully read the complaint.  And I'll hear from the

10:05:35 12   defendants.

10:05:43 13               MR. DOTSON:  May it please the Court, David

10:05:50 14   Dotson, Your Honor, with Duane Morris representing Fortinet.

10:05:53 15   And I will be addressing, or trying to address, all the

10:05:58 16   common issues among the defendants and then obviously the

10:06:01 17   Fortinet specific issues.  Mr. Conrad will jump in after me

10:06:04 18   if that's okay with Your Honor.

10:06:06 19               And we would like to reserve a couple of minutes

10:06:09 20   for reply, if that's okay with Your Honor.

10:06:12 21               THE COURT:  Sure.

10:06:12 22               MR. DOTSON:  The first point I wanted to make,

10:06:16 23   plaintiff has obviously not opposed our motion as to willful

10:06:20 24   infringement, so we're only dealing with the indirect

10:06:22 25   infringement allegations.

10:06:26  1                And just to provide a little bit of background

10:06:28  2     that I think is important as we walk through these issues,

10:06:30  3     the patent-in-suit is one patent, the '930 patent.

10:06:34  4     Plaintiff's allegations are that that patent reads on the

10:06:38  5     IEEE Power over Ethernet, or PoE as it's referred to by

10:06:44  6     industry standards.  And those components with respect to

10:06:49  7     the defendants' products, that's a chipset that defendants

10:06:53  8     purchase from a third-party supplier incorporated into much

10:06:58  9     larger products in this case with respect to the defendants.

10:07:01 10     And of course the patent is expired.  It expired in 2020.

10:07:06 11                First, I will jump into the common allegations

10:07:12 12     that are at issue against both defendants.  And these

10:07:18 13     allegations are kind of three major categories.  Allegations

10:07:22 14     that the patent was well-known in the industry standards,

10:07:25 15     the IEEE standards organization and members of the IEEE

10:07:30 16     standards organization.  Allegations that the patent was

10:07:34 17     discussed widely in published articles.  And then the

10:07:38 18     defendants' participation in, I think they call it the

10:07:42 19     tight-nit market.

10:07:42 20                A couple of points there that I think are key

10:07:44 21     here.  There is no allegation in the complaints that the

10:07:44 22     defendants were involved in the IEEE PoE standards

10:07:54 23     organizations.  There is no allegation in the complaint that

10:07:58 24     the defendants manufacture or develop Power over Ethernet

10:08:02 25     chipsets.  They acknowledge in the complaint that the

10:08:06  1    defendants purchased these chipsets from third parties.

10:08:10  2            And, of course, there is a lot of discussion

10:08:13  3    about Googling patents, Googling Network-1.  There is no

10:08:18  4    allegation that the defendants actually did any of that.

10:08:20  5    You can Google any patent and Network-1 is not a competitor

10:08:24  6    of the defendants.  So these are allegations that are

10:08:26  7    missing while there is a lot of discussion of hypotheticals,

10:08:31  8    there are conclusory statements about these things, but none

10:08:35  9    of them are plausible allegations that the defendants did

10:08:37 10    any of these things.

10:08:42 11            With respect to participation in the market,

10:08:45 12    there is case law that general participation in a relevant

10:08:48 13    market, that's not good enough.  Here it's even more

10:08:51 14    attenuated because we're not in the Power over Ethernet

10:08:55 15    market.  We make networking and security equipment.  We're

10:09:01 16    not a PoE chipset provider.  Even if allegations about

10:09:05 17    participation in the market were sufficient, they wouldn't

10:09:08 18    be in this case because that's not our market.

10:09:11 19            I won't walk through every one of these cases,

10:09:14 20    but the other piece to this that they alleged is that this

10:09:16 21    patent was widely litigated.  As Your Honor knows with

10:09:22 22    patent infringement cases, that's not uncommon to have many,

10:09:26 23    many cases filed on a patent.  But that's not good enough,

10:09:32 24    either.  The case law says that it's not plausible to allege

10:09:35 25    that we would know about a specific patent from among

10:09:40 1  hundreds of patent cases filed.  And I think they said they

10:09:43 2  sued twenty-five or so defendants so far.  Well, if it's a

10:09:48 3  lawsuit against a PoE chipset maker, that's not even a

10:09:51 4  competitor of ours.  Of course I already mentioned Network-1

10:09:55 5  is not a competitor of ours.  But it's not plausible and

10:09:58 6  it's not a reasonable inference to infer that the defendants

10:10:03 7  would monitor hundreds of lawsuits filed against all of

10:10:07 8  these players in the network and security industry.

10:10:10 9        Cisco was one that was talked about in the

10:10:13 10  complaints a lot and I did a quick search on Docket

10:10:17 11  Navigator.  From the time that Cisco was sued to the time

10:10:20 12  the patent expired, there were 219 cases in district courts

10:10:25 13  alone involving Cisco, patent cases.  That's not even

10:10:30 14  counting ITC cases, that's not counting appeals, Patent

10:10:34 15  Office practices, 219 just for Cisco.  It's simply not

10:10:38 16  reasonable to infer that we would know about this single

10:10:42 17  patent from among all of these competitor lawsuits.

10:10:45 18        And with respect to the PoE chipset

10:10:49 19  manufacturers, they were involved in the standard

10:10:52 20  organizations, therefore they knew about this patent.  Well,

10:10:55 21  that's not us.  There is no allegation that any of the PoE

10:11:00 22  chipset suppliers actually notified us.  There is

10:11:04 23  allegations that they knew about this, and there is

10:11:07 24  speculation, or conclusory statements that, of course, they

10:11:12 25  would tell other people about these patents, but none of the

10:11:14 1   allegations are specific to the defendant.  The closest they

10:11:18 2   get is Microsemi, one of the PoE chipset providers or

10:11:24 3   manufacturers, I should say.  They entered into a license to

10:11:29 4   the patent and there is an alleged obligation as part of

10:11:32 5   that license agreement to assist with notifying people about

10:11:36 6   this patent.  They stopped short of alleging that Microsemi

10:11:43 7   ever notified the defendants and there is probably a good

10:11:46 8   reason --

10:11:46 9            THE COURT:  How about you tell me about willful

10:11:49 10  blindness.

10:11:51 11           MR. DOTSON:  Sure.  Willful blindness here, the

10:11:59 12  standard as we know from *Global-Tech*, the defendant has to

10:12:02 13  subjectively believe there is a high probability that a fact

10:12:09 14  exists and they must take deliberate actions to avoid

10:12:13 15  learning of that fact.

10:12:14 16           What we have in the complaints is really just

10:12:17 17  a -- they must have been willfully blind.  There is this

10:12:20 18  hypothetical that if we didn't know about the patents,

10:12:24 19  therefore we must have done all of these nefarious things,

10:12:28 20  instructing our employees to ignore it and bury their heads

10:12:32 21  in the sand.  There is no allegation, no plausible

10:12:34 22  allegation at least that we actually did any of these

10:12:37 23  things.

10:12:37 24           So we have this sort of heads I win, tails you

10:12:41 25  lose argument, and that can't be right because otherwise

10:12:44 1    willful blindness always folds into itself and there is

10:12:48 2    always willful blindness.  But when you look at the actual

10:12:51 3    allegations in terms of what are they saying that the

10:12:54 4    defendants actually did in terms of a well-pled fact, there

10:12:59 5    is nothing there for subjective belief of infringement or

10:13:03 6    deliberate actions to avoid learning of a patent from a

10:13:06 7    completely different industry than the defendants deal with

10:13:09 8    day-to-day.

10:13:10 9            And they talk about the *Global-Tech* case, they

10:13:13 10   try to analogize the *Global-Tech* case to this case.  That

10:13:17 11   case is highly distinguishable.  There you have a plaintiff

10:13:21 12   who purchased a product from overseas because they knew it

10:13:24 13   wouldn't be marked with a U.S. patent, they tore it down,

10:13:27 14   they copied it and they released it in the U.S. market.  And

10:13:30 15   when they sought a right-to-use opinion from their lawyer,

10:13:34 16   they withheld all kinds of information about the fact that

10:13:37 17   A, they knew about the patent; and B, that they tore this

10:13:40 18   product down and copied it.  So you have all kind of

10:13:43 19   nefarious activity there.  That's not present here, and

10:13:46 20   there are not even any allegations that any of that occurred

10:13:49 21   here.  So willful blindness just in terms of what's alleged

10:13:52 22   in the complaint, it doesn't get there.  There is no willful

10:13:56 23   blindness here.

10:14:12 24           And going back to the general allegations, just

10:14:16 25   briefly, this idea that general due diligence in the

10:14:21  1    industry would require us to find this patent doesn't really

10:14:23  2    hold water either.  Network-1 is not a competitor.  We're

10:14:27  3    not in the PoE chipset industry.  And PoE chipset

10:14:31  4    manufacturers aren't competitors.  So this conclusory idea

10:14:34  5    that every competitor knows of another competitor's patents

10:14:38  6    and licenses in this case, if it's been licensed to them,

10:14:42  7    the case law just doesn't support that type of allegation.

10:14:47  8            To touch briefly on the unique allegations

10:14:53  9    against Fortinet, I'll talk about this a little bit.  The

10:14:57 10    first one I want to touch on are the letters to Meru

10:15:01 11    Networks.  They allegedly sent two letters to Meru Networks

10:15:04 12    which was ultimately acquired by Fortinet eleven years and

10:15:09 13    seven years before that acquisition.  The allegations in the

10:15:14 14    complaint with respect to these letters don't pass muster.

10:15:18 15    There is no allegation that Meru had some sort of duty to

10:15:23 16    preserve these letters for seven years, much less that they

10:15:27 17    were actually transferred to Fortinet, much less that

10:15:30 18    Fortinet actually saw those letters and reviewed them, much

10:15:33 19    less that the allegations related to Meru products would

10:15:36 20    impute to subsequent Fortinet products.

10:15:40 21            And these letters, as far as I know, there is no

10:15:44 22    allegation that they ever led to litigation or licensing.

10:15:48 23    They could have been an afterthought.

10:15:51 24            THE COURT:  But why isn't it enough that they

10:15:54 25    allege that and then they get some discovery and if it turns

10:15:58 1    out that none of that is true or nothing happened, that

10:16:02 2    maybe it's a summary judgment issue.  I take your point,

10:16:06 3    this is -- this one is on the cusp for me, but if it's on

10:16:13 4    the cusp and it's a motion to dismiss, I'm not sure that I

10:16:24 5    can dismiss it.

10:16:25 6            Let's say they have these allegations and you

10:16:27 7    say those allegations are insufficient, but you know, there

10:16:30 8    is something, there is knowledge to a company that was

10:16:34 9    acquired and maybe it's fair to impute that knowledge to

10:16:41 10   Fortinet, maybe it's not, maybe those letters were never

10:16:43 11   kept and Fortinet didn't have them and they're too old, but

10:16:49 12   is this a motion to dismiss?

10:16:51 13           MR. DOTSON:  Your Honor, we believe it is.  To

10:16:53 14   your point, when you look at the case law, there is not a

10:16:56 15   lot that's analogous to this.  The one that we did find, the

10:17:03 16   *Olaf Soot Design* case in the willfulness context, but again,

10:17:07 17   we're dealing with knowledge of a patent.  It's a Southern

10:17:09 18   District of New York case, but it held that plaintiff there

10:17:13 19   likewise did not cite any law for the supposition that a

10:17:17 20   purchasing company acquires the knowledge of a patent from

10:17:21 21   the target company.  It's just -- it's so far removed that

10:17:28 22   the allegation is not plausible.  And if that's all we have

10:17:31 23   to stand on, there is not enough here to sustain an indirect

10:17:38 24   infringement claim based on these pleadings.

10:17:41 25           So in the meantime, we spend hundreds of

10:17:44 1    thousands of dollars to get to summary judgment on an issue

10:17:46 2    that wasn't well pled.  And there is a line of argument kind

10:17:52 3    of to this point in plaintiff's opposition that somehow we

10:17:57 4    can add all these allegations together and it's good enough,

10:18:02 5    but that kind of ignores the fact that the first step in

10:18:05 6    this inquiry is we have to identify the well pled facts,

10:18:09 7    things that aren't conclusory, things that aren't based on

10:18:14 8    improper inferences, we have to do that first and then we

10:18:18 9    decide whether it's plausible.  We can't just add up a bunch

10:18:21 10   of factual allegations, purported factual allegations that

10:18:25 11   aren't well pled and somehow make that a well pled factual

10:18:30 12   allegation to then get to possibility factor, so in line

10:18:32 13   with this *Olaf Soot Design* case, if that's what we're left

10:18:34 14   with, this allegation about Meru Networks, that's not going

10:18:37 15   to be good enough to sustain at a motion to dismiss the

10:18:42 16   indirect infringement claims here.

10:18:43 17            And again, there is no actual allegation that we

10:18:49 18   ever saw these letters that's supported by any sort of

10:18:54 19   factual basis.

10:18:58 20            The other point that's Fortinet specific, this

10:19:01 21   notice from Microsemi that we touched on a little bit, they

10:19:02 22   allege that Microsemi was licensed in 2008, reached out to

10:19:09 23   its customers as part of an agreement to do so through 2008.

10:19:12 24   The problem is, they even allege that Fortinet didn't begin

10:19:17 25   introducing Power over Ethernet capable devices until 2010,

10:19:22 1    so it's not reasonable to infer that Fortinet would have

10:19:26 2    been contacted by Microsemi and notified of this '930

10:19:30 3    patent.

10:19:31 4              And then employee knowledge with respect to

10:19:36 5    Fortinet.  I think the allegation is there are 500 employees

10:19:39 6    that somehow would have known about this.  There is nothing

10:19:43 7    specific, they didn't identify any individual employee, much

10:19:47 8    less how they would have known about this patent, much less

10:19:50 9    how they would have imputed that to Fortinet.  And I think

10:19:53 10   the *Robocast* case here is instructive because there the

10:19:57 11   general counsel of a prior company that was sued on the

10:20:00 12   patent, went to another company, and even that wasn't good

10:20:03 13   enough.  They said there was no allegation that was

10:20:06 14   supportable that he was involved in that specific

10:20:08 15   litigation, so that's not going to satisfy the pleading

10:20:11 16   standard there.

10:20:15 17             And I'll turn it over, unless Your Honor has any

10:20:19 18   further questions, from me to Mr. Conrad, if that's okay.

10:20:22 19             THE COURT:  Okay.

10:20:30 20             MR. CONRAD:  Good morning, Your Honor.  David

10:20:33 21   Conrad on behalf of Ubiquiti.  Very briefly just a very few

10:20:33 22   points that are specific to Ubiquiti.  This employee

10:20:42 23   knowledge allegation, same for us, just different employees

10:20:46 24   identified.  And it's a similar analysis as well for

10:20:52 25   Ubiquiti, that none of the allegations involve an employee

10:20:57 1    who had a reason to know about these patents, just that they

10:21:01 2    happened to work at Cisco, for example, during the

10:21:04 3    litigation.  And as Your Honor knows, Cisco is made of

10:21:09 4    thousands and thousands of employees and there is nothing

10:21:12 5    particular about any kind of specialized knowledge.

10:21:15 6           The other unique allegations against Ubiquiti

10:21:19 7    are even far more tenuous than what we've discussed so far.

10:21:24 8    There was an allegation that Fish & Richardson, my firm, had

10:21:28 9    some blog posts over the years that identified Network-1,

10:21:32 10   and their litigation, and there is no identification what

10:21:36 11   these posts are or how they can actually be connected to our

10:21:41 12   client or our work for our client and it would be improper

10:21:44 13   to impute that kind of knowledge from the law firm to the

10:21:47 14   client.  I did look up, try to see what these blog posts

10:21:50 15   were and the only one I came across was just what we call a

10:21:54 16   monthly round up of cases in the Northern District and

10:21:59 17   Eastern District of Texas, one of them happened to mention

10:22:02 18   this lawsuit.  And the other specific allegation is that

10:22:05 19   there were some posts on the community board which is where

10:22:09 20   users and customers can post messages that mention other

10:22:12 21   players in the marketplace, but none of them, none of the

10:22:16 22   allegations actually suggest that this patent or Network-1

10:22:23 23   was actually involved or mentioned in those blog posts.

10:22:26 24          And so, Your Honor, that's it, the difference

10:22:29 25   between the parties.  I think to your point that why a

10:22:34 1   motion to dismiss here, just to remind the Court about what

10:22:39 2   was said earlier, this patent is expired.  It expired before

10:22:42 3   this lawsuit.  So this really is the case.  If there is

10:22:46 4   nothing here and they can't allege anything here based upon

10:22:51 5   throwing the kitchen sink at it, right, all these different

10:22:55 6   ways in which they try to say something must stick for there

10:22:59 7   to be knowledge, that's why it matters at this stage.

10:23:02 8           THE COURT:  I understand why it matters, I

10:23:04 9   always understand why it matters because it's a big -- it's

10:23:07 10  a different economic analysis, but that's not my issue.  My

10:23:13 11  issue is whether there is sufficient pleading to grant the

10:23:16 12  motion.  So I understand why it's brought.  I'm not

10:23:21 13  criticizing in any way why you brought this on a patent that

10:23:24 14  expired a number of years ago and that is just coming out of

10:23:28 15  the woods now, but that's not the issue that I'm looking at

10:23:32 16  in trying to figure out whether the pleadings -- looking at

10:23:38 17  it in the light most favorable to them whether there is --

10:23:42 18  whether they can make out a case.

10:23:44 19          MR. CONRAD:  Thank you, Your Honor.  And as

10:23:46 20  we've seen, they're throwing the kitchen sink at it and we

10:23:49 21  don't see anything there and we don't think these

10:23:52 22  allegations can form a plausible complaint for indirect

10:23:56 23  infringement.

10:23:57 24          Any other questions, Your Honor?

10:23:59 25          THE COURT:  No.  Thank you.

10:24:02  1                    MR. CONRAD:  Thank you.

10:24:05  2                    THE COURT:  All right.  So Mr. Farnan, just so

10:24:07  3       we're clear, the patent is expired, right?

10:24:10  4                    MR. FARNAN:  Yes, Your Honor.

10:24:10  5                    THE COURT:  And no dispute that you're fine with

10:24:13  6       granting the motion with regard to willfulness?

10:24:16  7                    MR. FARNAN:  Yes, Your Honor.

10:24:17  8                    THE COURT:  And Fish & Richardson, you're not

10:24:19  9       really saying you can impute knowledge of all of their

10:24:23 10       clients of anything that Fish & Richardson post on their

10:24:26 11       web, right?

10:24:26 12                    MR. FARNAN:  No, Your Honor.

10:24:27 13                    THE COURT:  All right.  So, go ahead.

10:24:28 14                    MR. FARNAN:  Your Honor, this motion is all

10:24:30 15       about the factual allegations, and whether we can plausibly

10:24:34 16       allege certain facts and not about evidence or proof.  And

10:24:37 17       what the defendants seem to say is that we must have

10:24:39 18       evidence and proof at this stage which is not required.

10:24:42 19                    As an example, Your Honor, if you look at

10:24:44 20       Fortinet, with respect to Meru Networks, they have said that

10:24:48 21       we should cite document retention policies.  And that's just

10:24:51 22       unheard of, Your Honor, for a complaint.  No party will have

10:24:55 23       document retention policy decided in the complaint.  That's

10:24:58 24       kind of evidence you are looking for and that's the kind of

10:25:01 25       evidence you won't get.  If you look at the cases it's

10:25:04  1   important to note that of the cases that were cited that

10:25:07  2   involve standard essential patents, there were two of them.

10:25:09  3   In those two cases that were cited by all the parties in the

10:25:13  4   briefs, the courts found that those cases have factual

10:25:17  5   allegations of knowledge to go forward because that's

10:25:20  6   important because the same standard essential patents mean

10:25:24  7   something and it's a different realm.

10:25:25  8          We also note that in *Elm*, every case must be

10:25:29  9   taken on their own merit, that's what the court said.  And

10:25:32 10   the defendants have done a job in chopping up each

10:25:35 11   allegation and separating them and saying this allegation is

10:25:38 12   insufficient, this allege is insufficient.  That's not what

10:25:40 13   the case law says.  Look at *Elm*, take it as a whole.  In

10:25:45 14   *SoftView,* the court when referencing AT&T filing false

10:25:49 15   allegations said take it as a whole.  When you look at

10:25:50 16   *Soverain*, the court said take it as a whole.  And that's

10:25:52 17   what we said in our briefing, you take it as a whole.  With

10:25:57 18   all these allegations, we made a factual allegation that

10:25:59 19   there is knowledge by the defendants.  That's what makes

10:26:02 20   this motion interesting for Your Honor, it's more of a gut

10:26:05 21   check, the cases are almost a wash, they can go either way,

10:26:09 22   it's what Your Honor feels, if we met the standard which is

10:26:11 23   factual allegations to show knowledge and we claim we have.

10:26:15 24          For Ubiquiti we claimed former employees that

10:26:17 25   are now at Ubiquiti that were at Cisco, three at Cisco and

10:26:23 1    more than 3Com, that were there at the time that Fortinet

10:26:25 2    asserted the patent.

10:26:25 3            THE COURT:  Do you assert that those folks based

10:26:28 4    on being at a company had reason to know of that litigation

10:26:33 5    involved that patent?

10:26:33 6            MR. FARNAN:  We do not have specific -- we do

10:26:36 7    not have specific facts that say they knew that at the time,

10:26:38 8    what we're saying is it's plausible given the notoriety of

10:26:42 9    this patent, it's a crown jewel patent, Power over Ethernet.

10:26:47 10           THE COURT:  But didn't you expect that you have

10:26:50 11   something like -- who are these employees?  Like, they're

10:26:53 12   chief technical officer went there and so, you know, that

10:26:58 13   person given his place in the hierarchy at the previous

10:27:04 14   company of course would have known that that patent was

10:27:08 15   being asserted.  I mean, do you have anything that tells me

10:27:11 16   more than just -- you know, I mean based saying some

10:27:15 17   employees, it could be like the janitor who had no reason to

10:27:20 18   understand that there was patent litigation let alone what

10:27:23 19   that litigation was about.

10:27:24 20           MR. FARNAN:  Sure.

10:27:27 21           THE COURT:  So what am I supposed to do with

10:27:29 22   some employees worked there and then they moved there, that

10:27:32 23   doesn't seem like it gets you anywhere.

10:27:34 24           MR. FARNAN:  Understood, Your Honor.  What we

10:27:35 25   have said in the complaint, it's an engineer, it's a product

10:27:38 1    manager, it is the vice-president of marketing, that's for

10:27:41 2    Cisco.  And they're not janitors, not low level employees.

10:27:44 3    An engineer probably knows about this patent, if that

10:27:47 4    engineer has any access into the Power over Ethernet realm.

10:27:51 5    We also said for 3Comm it was a CEO and president.  These

10:27:55 6    are high level people.  We're saying these high level people

10:27:59 7    looking at this patent which is notorious in this industry

10:28:02 8    would know about it, or most likely know about it, it's

10:28:05 9    plausible they would know about it, and that's the standard.

10:28:07 10           For Fortinet we mentioned the Meru letters, and

10:28:11 11   I understand think cited Olaf, but we're not saying as a

10:28:14 12   matter of law just because a subsidiary is acquired that

10:28:17 13   company is known, that company is charged with that

10:28:19 14   knowledge, that's not what we're saying.  We're saying if

10:28:23 15   you do any due diligence as a company as most companies do

10:28:26 16   and you look at Meru when acquiring it, Fortinet probably

10:28:29 17   would have seen the litigation letter and said hey, we have

10:28:33 18   these two litigation letters, that's what we're saying.

10:28:36 19           There is Microsemi, and just like the case, it

10:28:40 20   was Coral Optical where when one of the suppliers says that

10:28:45 21   they have given notice to their customers, then it's easy to

10:28:48 22   infer that if that defendant is a customer, then they

10:28:52 23   received that knowledge from Microsemi, that's what we're

10:28:55 24   saying.  That's our factual allegation.  We can't prove it

10:28:58 25   right now, but it's most likely that's a factual allegation

10:29:01 1    that we think we can prove.

10:29:03 2                    THE COURT:  Okay.

10:29:05 3                    MR. FARNAN:  And I mean, I can go through the

10:29:08 4    other facts, Your Honor, but I feel like you may have heard

10:29:10 5    enough.  If there is any other questions.

10:29:12 6                    THE COURT:  Anything else you want to tell me is

10:29:14 7    fine.

10:29:14 8                    MR. FARNAN:  The last thing I'll say, Your

10:29:16 9    Honor, is the defendants are not saying that what we're

10:29:18 10   saying is false, that it's not true, they're just saying

10:29:21 11   that we haven't proven that they have the knowledge and

10:29:24 12   that's the important distinction factor.  No one can prove

10:29:27 13   at this point that they have the knowledge, but they haven't

10:29:30 14   come out and said this fact is not true or this is not true.

10:29:34 15                   With that, Your Honor, nothing else.

10:29:35 16                   THE COURT:  All right.  Thank you.

10:29:40 17                   Rebuttal?

10:29:43 18                   MR. CONRAD:  Your Honor, David Conrad.  Just

10:29:45 19   briefly on the issue of employees, you asked about what kind

10:29:42 20   of facts would matter.  The case that was cited --

10:29:52 21                   THE COURT:  I know about the general counsel.

10:29:55 22                   MR. CONRAD:  It's general counsel, general

10:29:56 23   counsel and CEO, so the fact that these are high level

10:30:00 24   employees that are mentioned for us doesn't really matter.

10:30:02 25   What may make sense if there was an employee that was a star

10:30:07 1    witness on the trial that showed up --

10:30:09 2              THE COURT:  I guess my question is based on

10:30:11 3    what's alleged, I mean, what if they say he was -- based on

10:30:19 4    his position and working with products that were alleged, on

10:30:25 5    information and belief he knew about them.  I mean, clearly

10:30:28 6    they don't know what was in his mind, but why isn't this a

10:30:33 7    case where they get some discovery and they can find out did

10:30:36 8    he have any knowledge of this?

10:30:38 9              MR. CONRAD:  This is the best they can come up

10:30:39 10   with.  If there was -- if they could have found an employee

10:30:43 11   who was a member of the standards organization that is

10:30:47 12   responsible for this particular standard, and attended those

10:30:51 13   meetings.

10:30:52 14             THE COURT:  But he would know all of the

10:30:55 15   defendants' employees, right?

10:30:57 16             MR. CONRAD:  Well, they were able to come up

10:30:58 17   with five -- actually eight different names and they could

10:31:01 18   search through LinkedIn to come across all these different

10:31:05 19   names and crosscheck them, and this is the best they can

10:31:07 20   come up with.  So it's not like there is knowledge hidden

10:31:11 21   from them, this is all out there, they did their best and

10:31:12 22   obviously it's not even getting close, not meeting any of

10:31:15 23   the standards that the cases that we cited require there to

10:31:21 24   be knowledge.

10:31:24 25             Thank you.

MR. DOTSON:  Dave Dotson.  Just briefly, Your Honor.  Counsel mentioned two cases that dealt with industry standards.  I'm not exactly sure which cases those were.  I know one of them is a cellular communication case and probably the other one as well, but the allegations were because the defendants were involved in those standard setting organizations, so it's a lot more plausible that if you're involved in the standard setting organization, if the patent is related to the standard, you might know about it. Here there is no such allegation.  We're not involved in the standards for Power over Ethernet because we just buy that solution from someone else.

And again, there was a discussion from opposing counsel about well, we're asking them to prove their case. Well, that's not what we're doing.  What we're saying is your allegations don't have facts, alleged facts in your allegations to support your claims.  It's not about proof.

And finally, this idea again that you can add up all of these allegations that are not well pled facts, that's not what *SoftView* stands for, that is not what *Soverain* stands for.  Those cases dealt with obviously different facts in terms of patents being cited during prosecution, and inventors of patents meeting with the company, you had much more pinpoint facts in those allegations that were pled.  And while each of those

10:33:05 1    individually might not have been good enough for knowledge,

10:33:09 2    together they were okay.

10:33:11 3        Here we have facts that are not even well pled.

10:33:14 4    We have conclusory allegations that involve assertions, so

10:33:17 5    we don't even get to the plausibility point when you have

10:33:20 6    those types of allegations, that's the difference there.

10:33:23 7        Thank you, Your Honor.

10:33:24 8        THE COURT:  All right.  I have before me the

10:33:33 9    motion to dismiss in terms of willful and indirect

10:33:36 10   infringement.  I'm going to grant the motion as to

10:33:39 11   willfulness.  It's not opposed.  And I will deny the claim

10:33:43 12   for inducement.

10:33:43 13       To state a claim for inducement, there must be

10:33:46 14   allegations of knowledge of the patent and knowledge of the

10:33:49 15   infringement.  Here it is true that there are no allegations

10:33:50 16   that the current defendants knew of the patent directly.

10:33:53 17   There are, however, allegations at least for Fortinet, the

10:33:56 18   predecessor, was sent letters and had knowledge as well as

10:34:00 19   for both defendants pages and pages of the allegations about

10:34:02 20   the publicity surrounding the patent and the purported issue

10:34:06 21   and the defendants knew that their products were using that

10:34:10 22   standard.

10:34:11 23       Look, I see that this is a very close call, but

10:34:14 24   there are some unique facts in this case, including that we

10:34:17 25   have a patent involving a standard that was well publicized

10:34:20 1   and well-known, and I do take plaintiff's point that much of

10:34:24 2   defendants' arguments suggest that there is a lack of proof

10:34:28 3   rather than a lack of factual allegations from which I can

10:34:32 4   draw a reasonable inferences.  And we don't simply have just

10:34:39 5   a bunch of conclusory allegations here, these have some

10:34:44 6   weight to them.  And so as I said, I think it's a close

10:34:51 7   call.  I think in the context of a motion to dismiss, that

10:34:55 8   supports denying the motion.  So that's my ruling.

10:34:58 9        With that being said, I am sensitive to

10:35:01 10  defendants' concerns about the costs of discovery, so is

10:35:06 11  this something where we can bifurcate discovery and see if

10:35:10 12  after discovery is bifurcated summary judgment motions are

10:35:15 13  appropriate?

10:35:24 14        MR. CONRAD:  Your Honor, on behalf of Ubiquiti,

10:35:27 15  I think it's something that we should discuss.  There is

10:35:31 16  this knowledge issue and there is also a marking issue both

10:35:33 17  of which may be dispositive to this, at least almost

10:35:38 18  entirely or in full.

10:35:39 19        THE COURT:  I'm not agreeing, I don't usually

10:35:42 20  agree that you can have an early summary judgment, so don't

10:35:42 21  count on it, but I am willing to let you guys go back and

10:35:50 22  discuss what makes sense in the context of moving this case

10:35:54 23  forward, particularly given this issue.  I mean, I think

10:35:58 24  it's fair to give the plaintiff some ability to see if there

10:36:02 25  is anything to the potentially -- or to the reasonable

10:36:08 1    inferences that I can draw from their allegations.

10:36:12 2              So why don't you go back and talk about that.

10:36:15 3    I'm not agreeing you can suddenly start bringing in marking

10:36:19 4    and every other early summary judgment because in my

10:36:22 5    experience that just winds up with me dealing with cases for

10:36:27 6    ten years instead of three when they come back repeatedly

10:36:30 7    after appeals.  So go talk about whether there is some

10:36:35 8    reasonable way of bifurcating discovery on the inducement

10:36:39 9    issues and the knowledge of the patent and knowledge of

10:36:43 10   infringement.  And then if you guys can come to an

10:36:48 11   agreement, great, if not, I guess we'll have to meet again.

10:36:52 12   But if you can, then after that you can give me a schedule.

10:36:58 13   I am not going to agree that you can file motions for

10:37:01 14   summary judgment, but you can submit a three, four-page

10:37:05 15   letter telling me why you think that there are no genuine

10:37:09 16   issues of material fact that would allow me to grant such a

10:37:14 17   motion and that it wouldn't be just a waste of my time.

10:37:17 18              MR. CONRAD:  Okay.  Thank you, Your Honor.

10:37:18 19              THE COURT:  Anything you want to add,

10:37:20 20   Mr. Farnan?

10:37:20 21              MR. FARNAN:  No, Your Honor.  Thank you.

10:37:22 22              THE COURT:  So you guys can go back and talk

10:37:24 23   about that.  And why don't you take -- see where you can get

10:37:28 24   in the next week or so, and let us know with a status report

10:37:32 25   whether you have come to an agreement, if you have a

10:37:38 1    schedule for doing that, et cetera.  All right?

10:37:41 2                    All right, everyone, have a good weekend.

10:37:44 3                    COURT CLERK:  All rise.  Court is adjourned.

4                    (Court adjourned at 10:37 a.m.)

5

6                    I hereby certify the foregoing is a true and
accurate transcript from my stenographic notes in the proceeding.

7

8                                    /s/ Dale C. Hawkins
                                    Official Court Reporter
9                                      U.S. District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25